Filed 8/3/26  P. v. Campbell CA2/6
Opinion following transfer from Supreme Court

### NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SIDNEY CAMPBELL,<br><br>    Defendant and Appellant. | 2d Crim. No. B334456<br>(Super. Ct. No. TA058243)<br>(Los Angeles County)<br><br>OPINION FOLLOWING<br>ORDER VACATING PRIOR<br>OPINION |

In 2003, Sidney Campbell was convicted by jury of second degree murder after he and his brother shot and killed a 15-year-old boy.  The jury was not instructed on felony murder or natural and probable consequences.  In 2022, appellant filed a petition for resentencing pursuant to Penal Code[1] section 1172.6.  The trial court summarily denied the petition at the prima facie stage,

---

[1] All further statutory references are to the Penal Code.

finding appellant "is ineligible for resentencing as a matter of law."

On appeal, appellant argued the trial court erred in summarily denying his petition because, pursuant to *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*), *People v. Powell* (2021) 63 Cal.App.5th 689 (*Powell*), and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*), decisions that identified potential ambiguities in the aiding and abetting and murder instructions, he may have been convicted of second degree murder on an imputed malice theory.

In an unpublished opinion, we affirmed the trial court's summary denial of appellant's petition for resentencing. (*People v. Campbell* (Dec. 11, 2024, B334456 [nonpub. opn.] (*Campbell II*).) In so doing, we considered several recent cases, namely *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921 (*Berry-Vierwinden*), *People v. Burns* (2023) 95 Cal.App.5th 862, and *People v. Flores* (2023) 96 Cal.App.5th 1164 (*Flores*),[2] which disagreed with *Maldonado* and *Langi* to the extent they had allowed an "instructional error [to] be asserted as a basis for section 1172.6 relief—even if the alleged error could have been raised on direct appeal under then-existing law . . . ." (*Berry-Vierwinden*, at p. 936.) We agreed with *Berry-Vierwinden* and its progeny that a petitioner may not raise a claim on a section 1172.6 petition that could have been raised on direct appeal. (*Campbell II*, *supra*, B334456.)

Our Supreme Court granted review and transferred the matter back to us with directions to vacate our decision and

---

[2] *People v. Berry-Vierwinden / People v. Burns / People v. Flores,* all three cases disapproved by *People v. Lopez* (2026) 19 Cal.5th 639 (*Lopez*).

2

reconsider the cause in light of *Lopez, supra,* 19 Cal.5th 639, which "disapprove[d] the *Burns-Flores/Berry-Vierwinden* line of cases" and held that " '[t]he mere fact that a petitioner could have raised an analogous . . . claim of instructional error at trial or in his original appeal does not render him categorically ineligible for relief under section 1172.6 . . . .' " (*Lopez*, at p. 658.) In this opinion, we have followed the Supreme Court's directions. We will affirm.

### *Factual Background*[3]

In 1999, appellant and his brother, Christopher Campbell, shot and killed 15-year-old Kenneth Colter. Earlier that day, Colter and another boy, 15-year-old Damien Culpepper, were "horse playing" and bent the bicycle tire rim of nine-year-old "Little Chris" Campbell. Little Chris went home and told his father, Christopher, what had happened. Christopher, along with his brother Clinton, angrily confronted Colter and Culpepper. After Christopher and Clinton left, Colter and Culpepper went to Culpepper's garage to get a replacement rim. Sometime later, Christopher returned, this time with appellant. A witness, Gerrina Hawes, saw Christopher and Colter arguing and went to get Colter. Appellant, who was standing in the area and appeared to be angry, told Hawes to mind her own business and leave.

Hawes saw Colter backing away from Christopher. She saw appellant take out a gun, motion for Colter to come to him, and start shooting. Culpepper, who was inside his house at the time, looked out his bedroom window and saw that appellant,

---

[3] These facts are summarized from our prior opinion in appellant's direct appeal. (*People v. Campbell* (Jan. 5, 2005, B170224) [nonpub. opn.] (*Campbell I*).)

Christopher, and Colter all had guns and were shooting them. Colter ran away from the scene but was shot in the neck and arm. He died from the gunshot wound to his neck.

In 2003, appellant was convicted by jury of second degree murder (§ 187, subd. (a)). The jury found true the special allegations that appellant personally used and discharged a firearm in the commission of the offense (§ 12022.53, subds. (b), (c)). The jury found not true the allegation that appellant intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (d)). Appellant was sentenced to an aggregate term of 35 years to life.

We affirmed appellant's conviction in a nonpublished opinion. (*Campbell I*, *supra*, B170224.)

### *Section 1172.6 Petition*

In 2022, appellant filed a form petition for resentencing. He declared he could not presently be convicted of murder "because of changes made to [sections] 188 and 189, effective January 1, 2019." The trial court appointed counsel and accepted briefing. In his briefing, appellant argued that even though the jury was not instructed on felony murder and the natural and probable consequences doctrine, he "may . . . have been convicted on a theory under which malice was imputed to him based solely on his participation in a crime" and ambiguous language in the jury instructions for aider and abettor liability.

### *Trial Court's Ruling*

The trial court conducted a hearing on whether appellant had made a prima facie case for relief.

After reviewing the briefs, the jury instructions, and the prior appellate opinion, the trial court denied the petition. It explained that the jury was not instructed on CALJIC No. 8.31,

4

the second degree implied malice murder instruction, the jurors "determined that Mr. Campbell was in fact a shooter who fired a weapon," and "the People's theory of liability for second-degree murder was based solely on aiding and abetting." The trial court concluded, "for those reasons, Mr. Campbell is not entitled to resentencing pursuant to Penal Code section 1172.6."

*Discussion*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) amended the felony murder rule and the natural and probable consequences doctrine, "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

To that end, Senate Bill 1437 amended section 188 by adding a requirement that, when the felony-murder rule does not apply, a principal in the crime of murder "shall act with malice aforethought" and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Senate Bill 1437 also enacted section 1172.6, which created a procedural mechanism for defendants who could not be convicted of murder or attempted murder under the amended laws to seek retroactive relief. (§ 1172.6, subd. (a)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Senate Bill No. 775 (2021-2022 Reg. Sess.) amended section 1172.6 to expand eligibility for resentencing to include not only those "convicted of felony murder or murder under the natural and probable consequences doctrine," but also those convicted of murder under any "other theory which malice is imputed to a

5

person based solely on that person's participation in a crime." (§ 1172.6, subd. (a), as amended by Stats. 2021, ch. 551, § 2.)

In deciding whether a petitioner has made a prima facie showing for relief, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. . . ." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) In making this determination, courts may examine portions of the record of conviction but may not engage in " 'factfinding involving the weighing of evidence or the exercise of discretion' " or make "credibility determinations." (*Id.*, at pp. 971, 974.) "At this preliminary stage, denial of a section 1172.6 petition is proper only '[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief.' " (*Lopez*, *supra*, 19 Cal.5th at p. 658; see *People v. Antonelli* (2025) 17 Cal.5th 719, 731 ["In assessing section 1172.6 petitions from individuals convicted following jury trials, the jury instructions will be critical"].)

We independently review a trial court's determination on whether a petitioner has made a prima facie showing. (*People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

*Appellant is Ineligible for Relief as a Matter of Law*

Appellant makes several arguments as to why the trial court erred in summarily denying his petition for resentencing.

Appellant first contends the trial court engaged in "judicial factfinding" at the prima facie stage. It did not. The trial court examined the record of conviction to determine if that record conclusively established that appellant was ineligible for relief as a matter of law. This did not require the trial court to make "evidentiary findings" and was entirely permissible under *Lewis*,

6

*supra*, 11 Cal.5th at pp. 970-972. Any reference to the appellate opinion and the undisputed factual summary therein was harmless based on the jury's findings in this case.

Appellant next contends, "contrary to the People's argument and the superior court's ruling," the jury was instructed on implied malice. The People agree that the jury was instructed on implied malice, which remains a valid theory, and was not instructed on imputed malice. Relying on *Langi*, *supra*, 73 Cal.App.5th 972, appellant contends he "may have been convicted on an imputed malice theory" given the ambiguity in the prior standard instructions regarding aiding and abetting a second degree implied malice murder.

In his supplemental brief, appellant notes that the Supreme Court in *Lopez* "endorsed" the potential ambiguity that was first recognized in *Powell*, which later gave rise to both *Langi* and *Maldonado*. (Citing *Lopez*, *supra*, 19 Cal.5th at p. 655.) Appellant contends, consistent with those decisions, this case should be remanded with directions for the superior court to issue an order to show cause and conduct further proceedings pursuant to section 1172.6, subdivision (d).

The People respond that *Lopez* has no impact on the this case, and given the instructions as a whole, it was not reasonably likely that the jury would have construed the instructions as allowing for imputation of malice. (Citing *People v. Estrada* (2022) 77 Cal.App.5th 941, 947-948 (*Estrada*); see *Lopez*, *supra*, 19 Cal.5th at p. 670 [declining to address the "reasonably likely standard" as outside the scope of the question presented].) The People contend that *Langi* is distinguishable, in any event. We agree.

7

In *Langi*, the defendant was convicted of second degree murder as an aider and abettor after he and three other men beat and robbed the victim, who died after a punch caused him to fall and hit his head. (*Langi*, *supra*, 73 Cal.App.5th at pp. 975-977.) On appeal from the summary denial of Langi's section 1172.6 petition, the appellate court considered whether a petitioner convicted of second degree murder established a prima facie case for relief based on the jury instructions given in that case. For example, the jury was instructed with CALJIC No. 3.00, setting forth that each principal in a crime, " 'regardless of the extent or manner of participation[,] is equally guilty.' " (*Langi,* at p. 981, fn. 8.) The jury was also instructed with CALJIC Nos. 3.01 (aiding and abetting) and 8.31 (second degree murder).[4] (*Langi,* at pp. at pp. 980-982.)

The Court of Appeal concluded that Langi was not categorically ineligible for relief pursuant to section 1172.6 based on the facts of that case. Relying on *Powell*, *supra*, 63

---

[4] CALJIC No. 3.01 provides: "A person aids and abets the commission of a crime when he, [¶] (1) with knowledge of the unlawful purpose of the perpetrator and [¶] (2) with the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] (3) by act or advice aids, promotes, encourages or instigates the commission of the crime."

CALJIC No. 8.31 provides: "Murder of the second degree is also the unlawful killing of a human being when: [¶] 1. The killing resulted from an intentional act, [¶] 2. The natural consequences of the act are dangerous to human life, and [¶] 3. The act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. [¶] When the killing is the direct result of such an act, it is not necessary to prove that the defendant intended that the act would result in the death of a human being."

8

Cal.App.5th at pp. 712-714, a direct appeal case, the *Langi* court reasoned that "the standard aiding-and-abetting instructions are ill suited to the crime of second degree murder." (*Langi, supra,* 73 Cal.App.5th at 982.) As the *Powell* court had determined, when standard aiding and abetting instructions are combined with second degree murder instructions and are not tailored to the facts of a specific case, a jury must find "the perpetrator intended to commit *the crime*, the aider and abettor intending to aid and abet the perpetrator in committing *the crime*, and that, by words or conduct, the aider and abettor in fact aided the perpetrator's commission of *the crime*." (*Powell*, at p. 714.) *Powell* concluded this creates a potential ambiguity because the actus reus and mens rea requirements for aiding and abetting a second degree murder do not turn on aiding in an underlying *crime* but aiding in the commission of the life-endangering *act*. (*Ibid.*; see also *People v. Reyes* (2023) 14 Cal.5th 981, 990–992 [approving *Powell*'s reasoning that for aiding and abetting murder liability, " '[t]he relevant act is the act that proximately causes death' "]; *Lopez, supra,* 19 Cal.5th at p. 654 [so noting].)

Applying *Powell*'s logic, the *Langi* court agreed with the petitioner that "under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, [Langi] need only have intended to encourage the perpetrator's intentional act—in this case, punching [the victim]—whether or not [Langi] intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing. ¶ The instructions should have explained that, to be guilty as a direct aider and abettor of second degree murder, an accomplice must

9

have acted with the mental state of implied malice." (*Langi, supra*, 73 Cal.App.5th at p. 983.)

*Langi* was followed by *Maldonado, supra*, 87 Cal.App.5th 1257. Maldonado was convicted of first degree murder and the jury was not instructed on the natural and probable consequences or felony-murder doctrines. (*Id.*, at p. 1259.) Maldonado sought resentencing pursuant to section 1172.6, arguing that he could have been convicted on a theory under which malice was imputed to him based solely on his participation in a crime. (*Ibid.*) In so arguing, he relied on "the jury instructions for aiding and abetting, implied malice, and lying-in-wait murder, and on the analysis in *People v. Langi* . . . ." (*Ibid.*) The *Maldonado* court remanded the matter for an evidentiary hearing after concluding that the jury instructions created an ambiguity, similar to *Langi* and *Powell*, such that the defendant could have been convicted on a theory of imputed malice. (*Id.* at pp. 1264-1267, 1269.)

But the ambiguity identified in *Powell*, *Langi* and *Maldonado* is not present in this case. The only offense charged here was murder—there was no other crime alleged (e.g., battery) and no theory under which malice was not a requirement. The jury was instructed with CALJIC Nos. 3.00 (principals-defined), 3.01 (aiding and abetting), 8.10 (murder-defined), 8.11 (malice aforethought-defined),[5] CALJIC No. 8.20 (deliberate and

_____

[5] CALJIC No. 8.11 is substantively similar to CALJIC No. 8.31 and provides: "'Malice' may be either express or implied. ¶ [Malice is express when there is manifested an intention unlawfully to kill a human being.] ¶ [Malice is implied when: ¶ 1. The killing resulted from an intentional act; ¶ 2. The natural consequences of the act are dangerous to human life; and ¶ 3. The act was deliberately performed with knowledge of the danger to,

10

premeditated murder), and 8.30 (unpremeditated murder of the second degree).  To find appellant guilty of murder, the jury had to find he personally harbored malice either as the perpetrator or as a direct aider and abettor.  The jury rejected the first degree murder option and convicted appellant of second degree murder.  As instructed, the jury could not have found appellant guilty of second degree murder without finding he personally harbored a malicious mental state.

The People also argue that *Langi* was wrongly decided because it did not apply the "reasonable likelihood" standard—that is, whether there is a reasonable likelihood the jury understood the instructions to support a conviction on a now-invalid theory of murder, an argument that has not been disturbed by *Lopez*.  (See *Lopez*, *supra*, 19 Cal.5th at p. 670; *Boyde v. California* (1990) 494 U.S. 370, 380.)

We conclude that as a matter of law, the jury instructions did not allow the jurors to convict appellant based on imputed knowledge.  Moreover, it is not "reasonably likely" the jurors construed the instructions in that matter.  (See, e.g., *People v. Allen* (2023) 97 Cal.App.5th 389, 397; *Estrada*, *supra*, 77 Cal.App.5th at pp. 947-948; *People v. Ervin* (2021) 72 Cal.App.5th

---

and with conscious disregard for, human life.] ¶ When it is shown that a killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought.] ¶ The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person killed. ¶ The word 'aforethought' does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act."

90, 107-109; *Maldonado, supra*, 87 Cal.App.5th at pp. 1267-1269; but see *Langi, supra,* 73 Cal.App.5th at p. 984 [evidentiary hearing is required when the record "does not conclusively negate the possibility" that the jury found petitioner guilty based on imputed malice].

Based on the foregoing, appellant's contention that he "may have been convicted on an imputed malice theory" fails.

Finally, appellant contends the trial court erred in relying on the jury's true findings on the firearm use and discharge allegations at the prima facie stage because those findings did not require a finding of malice aforethought. (Citing *People v. Offley* (2020) 48 Cal.App.5th 588, 597-599.) Although it is true *Offley* held that "an enhancement under section 12022.53, subdivision (d) does not *in itself* preclude a petitioner from obtaining relief," (*id.*, at p. 592, italics added), the trial court here did not rely exclusively on the firearm findings as dispositive proof of appellant's ineligibility for relief. Moreover, *Offley* is distinguishable because the jury there received an instruction on the natural and probable consequences doctrine. (*Id.* at p. 593.)

Having reconsidered the matter in light of *Lopez, supra*, 19 Cal.5th 639, we conclude appellant is not entitled to resentencing pursuant to section 1172.6 as a matter of law.

*Disposition*

The order summarily denying appellant's section 1172.6 petition for resentencing is affirmed.

12

NOT TO BE PUBLISHED.


                                    YEGAN, Acting P. J.

We concur:


        BALTODANO, J.


        CODY, J.

Laura R. Walton, Judge
Superior Court County of Los Angeles

_____

Eric R. Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and Lindsay Boyd, Deputy Attorney General, for Plaintiff and Respondent.